**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

LISA NAYDENE SHELTON,

        Plaintiff,

vs.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.

No.  1:16-CV-157-LRR

**REPORT AND RECOMMENDATION**

———————————————

      Plaintiff Lisa Shelton seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental  security income (SSI) under title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Shelton argues that the administrative law judge (ALJ), Eric S. Basse, erred in determining residual functioning capacity (RFC) because he discredited the statements of Shelton and others, he did not give sufficient weight to the medical opinions, and he required objective evidence of Shelton's limitations.  I recommend affirming the ALJ's decision.

_____

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

# I. BACKGROUND

Shelton suffers from a combination of physical and mental impairments, including problems with her back, knees, feet, and neck; obesity; anxiety; and depression. AR 12, 15-18, 261.[2] Shelton applied for SSI disability benefits on October 3, 2014, a little more than a week after receiving notice that the Appeals Council would not be reviewing a previous denial of benefits. AR 10, 95.

The Commissioner denied Shelton's initial application for SSI benefits in February 2015. AR 99-117. In connection with that determination, Shelton had a one-time consulting examination with Dr. Mark Taylor, who then evaluated her physical RFC.[3] AR 101-02, 105, 681-686. State agency medical consultants Dr. Matthew Byrnes and Dr. Russell Lark also assessed Shelton's physical and mental RFC, respectively, after reviewing treatment notes, Dr. Taylor's opinion, and Shelton's self-reported abilities and limitations. AR 101-104, 107-114. Dr. Lark also conducted a telephone interview with Shelton. AR 113.

Shelton's right knee worsened after the Commissioner's initial denial, and Shelton and her stepdaughter (whom she lives with) submitted updated function reports in April 2015. AR 129, 317-32, 335-42. A month later, in May 2015, Shelton had knee-replacement surgery on her right knee. AR 884-87. As part of the Commissioner's denial on reconsideration, issued in July 2015, state agency medical consultant Dr. Marlene Gernes reviewed the updated evidence and evaluated Shelton's physical RFC,

---

[2] "AR" refers to the administrative record below.

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

determining that it had worsened since the Commissioner's initial denial. AR 128-133, 138-39. Dr. Myrna Tashner also evaluated Shelton's mental RFC and affirmed the initial assessment. AR 133-136.

Shelton requested a hearing before an ALJ. AR 165-66. After a video hearing on April 6, 2016, at which Shelton and a vocational expert testified, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations[4] to determine whether Shelton was disabled. AR 10-23, 30-31. The ALJ found that Shelton suffers from the following severe impairments: "degenerative joint disease of the bilateral knees, status-post total right knee replacement, degenerative disc disease, obesity, history of interstitial lung disease, history of plantar fasciitis, major depressive disorder, and anxiety disorder." AR 12. To evaluate whether Shelton's impairments prevented her from performing her past work or other work, the ALJ determined Shelton's RFC, considering several medical opinions and assigning weight to each one. AR 14-22.

The ALJ gave little weight to the mental RFC opinions of Shelton's treating psychiatric nurse practitioner, Nancy Howe (NP Howe), and her treating psychologist, Dr. Luke Hansen. AR 18, 934-35, 1053-54. Dr. Hansen and NP Howe filled out mental RFC forms that were a little more than a page long. AR 934-35, 1053-54. They indicated that they had been treating Shelton since September 24, 2015, for recurrent major

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 416.920(a)(4) (2016). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

depression. AR 934, 1053. Dr. Hansen indicated that Shelton also suffered from anxiety. AR 1053. Dr. Hansen found that Shelton could perform simple tasks on a sustained basis; NP Howe found that Shelton's ability would depend on her pain and mood stability. AR 934, 1053. Dr. Hansen opined that Shelton's ability to pay attention, sustain pace, and maintain attendance at work were "[l]imited based on mood [and] pain," while NP Howe found it "[u]npredictable but sustained." *Id.* Both Dr. Hansen and NP Howe found that Shelton's ability to work and interact with other people would depend on her pain and mood. *Id.* Dr. Hansen similarly found that Shelton's ability to accept changes in the workplace would depend on her mood and pain; NP Howe found she would have no difficulties dealing with change. *Id.* Both NP Howe and Dr. Hansen found Shelton would miss more than four days of work a month. AR 935, 1054.

The ALJ also gave little weight to the physical RFC assessment of Dr. Michael Brooks, Shelton's treating rheumatologist who evaluated her RFC in March 2016. AR 18, 39, 1028-30. Like Dr. Hansen and NP Howe, Dr. Brooks filled out a short RFC form. AR 1028-30. He opined that Shelton could carry twenty pounds multiple times throughout the day for a total of two and a half hours. AR 1028. In an eight-hour day, he found that she could stand for two hours in thirty-minute increments and that she could sit for six hours in two-hour increments. *Id.* He also found that she could not kneel, crawl, squat, or engage in repetitive overhead use of her arms. *Id.* Finally, Dr. Brooks found that Shelton would miss about four days of work a month. AR 1029.

The ALJ also assigned little weight to the physical RFC opinion of Dr. Taylor, the consulting examiner. AR 17-18, 680-88. Dr. Taylor opined that Shelton would need to alternate between sitting, standing, and walking as needed for comfort. AR 685. He restricted her lifting to between ten and twenty pounds, depending on the level of lifting (i.e., knee, waist, or chest level). AR 684-85. He also opined that she could rarely kneel, crawl, stoop, bend, or climb stairs, and that she could never climb ladders. AR

685. Dr. Taylor also recommended rare exposure to fumes and extreme temperatures. *Id.*

The ALJ gave partial weight to the RFC opinions of the state agency medical consultants. AR 20-21. Dr. Lark and Dr. Tashner found that Shelton faced only mild and moderate limitations because of her depression and anxiety. AR 105-06, 111-13, 127, 134-35. They found that she faced moderate limitations in her ability to maintain attention for extended periods; to understand, remember, and carry out detailed instructions; to complete a normal workday and work week without interruptions from her mental impairments; to respond to changes in the workplace; to perform at a consistent pace without an unreasonable number of rest periods; and to interact appropriately with coworkers and the general public. AR 111-13, 134-35. They found that she faced no significant limitations in her ability to understand, remember, and carry out simple instructions; to maintain regular attendance; to work in coordination or proximity to others without being distracted by them; to make simple work-related decisions; and to accept criticism from supervisors. *Id.*

State agency medical consultants Dr. Byrnes and Dr. Gernes found that Shelton could frequently lift ten pounds and occasionally lift twenty pounds. AR 108, 129. They found that she could occasionally stoop, climb stairs, and crouch, but never crawl, climb ladders, or kneel. AR 108, 129-30. They recommended that she avoid concentrated exposure to extreme temperatures and fumes. AR 109, 130. They found that she could sit for six hours in an eight-hour day with normal breaks. AR 108, 129. Dr. Byrnes found that she could stand for six hours, but he made this assessment before Shelton's right-knee surgery and before degenerative changes in Shelton's left knee. AR 108, 129. Dr. Gernes found that Shelton could stand for four hours in an eight-hour day. AR 129.

Considering these medical opinions, as well as treatment notes, Shelton's testimony, and function reports, the ALJ determined Shelton's RFC as follows:

> [Shelton] has the residual functional capacity to perform a range of sedentary to light work . . . such that she could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk for four hours in an eight-hour workday, in increments. She could sit at least six hours in an eight-hour workday. She could never climb ladders, ropes, or scaffolds, never kneel, and never crawl. She could occasionally climb ramps and stairs, as well as occasionally balance, stoop, and crouch. She could not have concentrated exposure to extremes of heat, cold, and humidity, as well as no concentrated exposure to pulmonary irritants. She would require a cane for ambulation. She would be limited to simple, routine tasks, with short, simple instructions. She could perform simple work-related decisions with occasional workplace changes. She could have occasional interaction with the public, coworkers, and supervisors.

AR 14-21. The ALJ did not fully credit Shelton's statements, nor the third-party statements submitted by Shelton's mother-in-law and stepdaughter. AR 16, 19-21, 321-28, 335-42, 374.

Based on his assessment of Shelton's RFC, the ALJ found that jobs existed that Shelton could perform and that she was not disabled. AR 22-23. The Appeals Council denied Shelton's request for review on June 10, 2016 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2016).

Shelton filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 12-14), and the Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.    DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Shelton challenges only the ALJ's RFC determination, arguing that the ALJ erred in evaluating her credibility, that the ALJ should have given more weight to third-party statements and the medical opinions, and that some medical evidence does not support the resulting RFC determination. Keeping the substantial-evidence standard in mind, I address each of Shelton's arguments in turn.

### A. The Credibility Determination

Shelton argues that the ALJ improperly discredited some of her subjective complaints. When evaluating the credibility of a claimant's subjective complaints— including pain, shortness of breath, weakness, or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir.

1986). [5] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may also consider his personal observations of the claimant at the hearing. *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008).

The ALJ may not discount a claimant's subjective allegations based "solely on a lack of objective medical evidence." *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991). Neither may the ALJ rely solely on his personal observations of the claimant to evaluate credibility. *Lamp*, 531 F.3d at 632. The ALJ may reject a claimant's subjective complaints, however, based on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). "The ALJ [i]s not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

Here, after setting forth the *Polaski* factors, the ALJ determined that "the record does not fully support the severity of the claimant's allegations" and that some of Shelton's statements "are not consistent with the evidence to the extent" they conflict with the RFC determination. AR 19-20. Contrary to Shelton's argument otherwise, the ALJ did not rely on an incorrect legal standard and require objective medical proof of

---

[5] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

Shelton's pain.[6]    Instead, in evaluating Shelton's credibility, the ALJ relied on inconsistencies in the record and his own personal observations of Shelton at the hearing, as well as the lack of objective medical evidence—all acceptable factors to consider.  AR 16-21.

Shelton testified that her mind constantly races, which makes it difficult for her to concentrate and stay on task, and that her depression makes it hard for her to get out of bed every day.  AR 49.  In her function reports, she additionally stated that she feels paranoid and socially anxious when she has to leave the house, that she can pay attention for no more than ten to twenty minutes, and that she has trouble following oral instructions.  AR 281, 283, 285-86, 319, 326.  Substantial evidence supports the ALJ's determination that these allegations are contrary to the objective medical evidence and inconsistent with the overall record.  AR 20.  As the ALJ noted, treatment notes from Dr. Hansen and NP Howe, who treated Shelton's mental health, consistently reflect findings of little difficulties with memory and concentration.[7]  AR 1033-35, 1039, 1041. The ALJ also noted that Shelton can complete brief shopping trips and attends church about twice a month.  AR 15-16, 43-44, 284, 325.  Shelton's testimony and function reports suggest that while pain limits her ability to attend church and to grocery shop, she has no difficulties with these activities due to social anxiety.  *Id.*  The ALJ additionally noted that during the hour-long hearing, Shelton "had little, if any, trouble staying focused and engaged" (AR 20), which is appropriate to consider as one factor among

_____

[6] In addition to recognizing *Polaski*, the ALJ noted that when the limiting effects of pain "are not substantiated by objective medical evidence, [he] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  AR 15.

[7] The other instances cited by Shelton (Doc. 12 at 17) reflect that Shelton subjectively stated she was having trouble concentrating, not that NP Howe noted such behavior based on objective observations.  AR 1032, 1036.

many.  *See, e.g.*, *Burleson v. R.R. Ret. Bd.*, 711 F.2d 861, 863 (8th Cir. 1983) (holding that the ALJ appropriately considered as one factor that the claimant "was able to testify and focus his mind and attention upon questions at the hearing").

Substantial evidence also supports the ALJ's determination that Shelton's testimony regarding her hands is contrary to and unsupported by the medical evidence. Shelton testified that her hands have no strength to grasp objects and that they lock up and cramp with any repetitive movement.  AR 40-41, 45.  Treatment notes from May 2015 indicate a "mildly positive" compression test in the right hand but overall, that "she makes a good fist and hand grasp."  AR 876.  Other physical treatment notes do not reflect any complaints regarding Shelton's hands.  AR 671-73, 776, 849-53, 911-14, 923-27, 931-32, 976, 1006.  And as noted by the ALJ, Shelton also demonstrated strong grip strength during Dr. Taylor's February 2015 consulting examination.  AR 18, 684.

While perhaps a close call, substantial evidence supports the ALJ's conclusion that Shelton exaggerated her pain based on inconsistencies in the record.  AR 19-21.  For example, in a November 2014 questionnaire, Shelton stated she feels "sharp pain all the time" in her back, feet, neck, and right knee.  AR 276.  Treatment notes from March 2015 reflect that she reported having zero pain at that time.  AR 740.  Other treatment notes indicate that her pain is occasionally minimal overall or nonexistent in certain areas. AR 819, 853, 913, 925, 956.

Prior to surgery on her right knee in May 2015, treatment notes reflect Shelton reported feeling pain in her back, right knee, right leg, feet, and, on one occasion, neck. AR 696, 734, 740, 776-77, 818-19, 845, 849-53, 856, 875.  After recovering from surgery, she has not reported feeling pain in her right knee and only occasionally reports feeling back pain.  AR 911, 920, 923, 925, 931, 973, 1006.  Treatment notes from the latter half of 2015 reflect that Shelton primarily complained of pain in her neck and left knee, which is consistent with x-rays showing "degenerative changes in the lower portion

of the neck" and "[n]arrowing of the [left] knee joint space." *Id.*; AR 922. At the hearing, Shelton testified that her right knee is still stiff and that her left knee "act[s] up at times." AR 38. As the ALJ noted, post-surgery treatment notes indicate normal sensation, motor strength, gait, and range of motion. AR 16, 20, 914, 922, 926, 982. The Eighth Circuit has recognized that medical evidence of "normal motor strength, normal gait, normal range of motions, and capacity to do straight leg raises without much difficulty," in combination with other factors, supports discrediting a claimant's testimony of "weakness, constant [back] pain, and muscle spasms." *Castro v. Barnhart*, 119 F. App'x 840, 842, 844 (8th Cir. 2005) (per curiam) (affirming ALJ's credibility finding based on inconsistencies with the medical evidence, the claimant's daily activities, and the lack of treatment and medications sought by claimant).

Shelton testified that she could not sit for longer than was required of her at the hour-long hearing. AR 55. But she also testified that she cannot sit at a desk or table for longer than ten to fifteen minutes due to pain. AR 59. Shelton testified that she feels pain even when lying on her bed and that her pain is tolerable only when she rests in a recliner with her feet up and neck supported. AR 56, 59. She stated in a November 2014 pain questionnaire, however, that she must shift every ten to fifteen minutes between standing, sitting, and lying down. AR 278. In November 2015, she told Dr. Brooks that sleeping in a regular bed helps her pain. AR 931. And in April 2015, she reported that she was unable to sit in regular chairs and that she needed to be "propped up" in bed with pillows and blankets. AR 319. The record also reflects that she is able to go to church about two times a month and sit in the back, and if the pain is too much, she relocates to a couch or rocking chair in the bathroom and watches the service on a monitor. AR 43-44, 284, 325. Inconsistencies between a claimant's reports and testimony is a factor supporting an ALJ's decision to discount a claimant's subjective complaints. *See Choate v. Barnhart*, 457 F.3d 865, 871-72 (8th Cir. 2006).

Shelton testified that her pain would cause her to miss work "a lot more than" four days a month and that she would not be able to work "two hours a day." AR 54. She reported in November 2014 that she could walk the length of two city blocks. AR 285, 287. At the hearing, Shelton testified that she is no longer able to walk one block. AR 52. Shelton also testified that she cannot be on her feet for longer than ten or fifteen minutes. *Id*. Physical therapy notes from June 2015, shortly after Shelton's right-knee surgery (and before she had fully healed) are consistent, indicating that Shelton twice walked 120 feet during a session. AR 957. It is unclear whether Shelton improved more than this, however, as she stopped attending physical therapy. AR 16-17, 42, 845. The ALJ noted that the quality of Shelton's gait improved after her surgery and is now normal. AR 20, 926, 958, 982. The ALJ also noted that Shelton "is capable of moving about rather quickly when motivated," relying on a treatment note from August 28, 2015, when Shelton first complained of pain in her left knee. AR 20, 976. In that encounter, she refused physical therapy for her neck and left knee, which she had never tried before; she became upset when the nurse practitioner would not give her additional pain medication; and she "walked away quickly." *Id*. Treatment notes from that encounter indicate that Shelton's left knee exhibited a normal range of motion and had no swelling, and the notes suggest that Shelton may have been engaging in "[d]rug-seeking behavior." AR 975-76.

Shelton testified that she uses a cane when she walks. AR 43. The ALJ suggested that Shelton did not present with her cane at medical appointments in the latter half of 2015, noting that treatment notes were unclear. AR 16, 20. Treatment notes from June and August 2015 indicate that Shelton had her cane. AR 957, 961, 979. In September 2015, December 2015, and February 2016, NP Howe noted Shelton's gait was "slow and steady post right knee replacement" but made no mention of Shelton's use of a cane. AR 1033-34, 1036-37. The ALJ also found that the medical evidence did not support

Shelton's allegation that a doctor had told her to use a cane. AR 20. Shelton testified that her primary care physician, Dr. Sue Callahan, had instructed her to start using a cane a few months before her May 2015 knee surgery. AR 43, 46. At the hearing, Shelton's attorney suggested that documentation from Dr. Callahan regarding the use of the cane was not in the record. AR 46. Shelton's attorney said that she would supplement the record within a few days. AR 47. She never did, a fact relied on by the ALJ in determining that no medical evidence supported Shelton's use of the cane. AR 20. The record contains a treatment note from Dr. Callahan on April 10, 2015, however, stating that Shelton is to "[u]se the cane all the time." AR 778.[8] Because the ALJ's RFC assessment includes Shelton's use of a cane for ambulation, it does not seem that the ALJ relied heavily on this perceived inconsistency to determine Shelton's credibility. AR 14. Nothing suggests that the ALJ would have evaluated Shelton's credibility differently absent this error, and in any event, other evidence supports the ALJ's credibility determination. Any error in fact-finding by the ALJ regarding the cane is thus harmless. *See, e.g.*, *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (affirming the ALJ's credibility determination despite factual errors when "the remainder of the record" supported the ALJ's credibility determination and the ALJ would not have decided credibility differently "absent the errors").

Substantial evidence supports the ALJ's determination to discredit some of Shelton's statements regarding the severity of her symptoms. Although the record demonstrates that Shelton suffers from pain, it also shows that, as outlined above, her testimony is somewhat inconsistent with her prior statements, the treatment notes, and the medical evidence. Shelton may have exaggerated her symptoms out of fear of being

---

[8] Neither before the ALJ nor in the briefing for this appeal did Shelton's attorney note this fact. Doc. 12 at 20-21.

denied disability when her pain truly prevents her from being able to sit or stand for long periods of time. Reversal is not warranted, however, merely because I would weigh the evidence differently than the ALJ. Because the ALJ gave "good reasons" for the weight given to Shelton's subjective allegations, he did not err.

## B. Third-Party Statements

Shelton argues that the ALJ did not give sufficient weight to the third-party function reports submitted by her stepdaughter, whom she resides with, nor to the statement submitted by her mother-in-law. AR 289-96, 335-42, 374. In addition to objective medical evidence, the ALJ must "carefully consider any other information . . . about [a claimant's] symptoms," including "observations by . . . other persons." 20 C.F.R. § 416.929(c)(3) (2016); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844, 5882 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416).[9] Here, the ALJ considered the information submitted by Shelton's family members and found it reliable as evidence that Shelton is "limited from prolonged standing, walking, and heavy lifting." AR 16. The ALJ ultimately declined to afford the third-party statements "great weight," however, for the same reasons the ALJ discredited Shelton—namely, inconsistencies with the objective medical evidence and overall record. AR 16, 19. For the same reasons that the ALJ did not err in evaluating

---

[9] The SSA promulgated new rules for evaluating medical evidence effective March 27, 2017. 82 Fed. Reg. at 5844. By their terms, some rules apply only to claims filed after the effective date, some rules apply only to claims filed before the effective date, and some rules apply to all claims. *See id.* at 5862; *see also, e.g., id.* at 5852. I need not address retroactivity, however, *see, e.g., Burnette v. Colvin*, No. 14-cv-2178-SHM, 2017 WL 1169731, at *9 n.5 (W.D. Tenn. Mar. 28, 2017) (declining to apply the revised 20 C.F.R. § 404.1529(c)(3) retroactively); because for the issues here, the new and old rules are substantively the same. I thus cite to both the old and new rules throughout this Report and Recommendation.

Shelton's credibility, the ALJ did not err in assigning weight to the third-party statements. *See Jones v. Colvin*, No. C14-3049-MWB, 2016 WL 915236, at *8 (N.D. Iowa Mar. 7, 2016) (holding that discounting a third party's statements based on "their inconsistency with the preponderance of the medical evidence . . . is plainly an appropriate basis for doing so" (citing *Wright v. Colvin*, 789 F.3d 847, 853-54 (8th Cir. 2015))).

The ALJ also noted that because Shelton's family members "are not medically trained[,] . . . the accuracy of the information provided is questionable." AR 16. The Northern District of Iowa has held "that lack of medical training is not a good reason to discount third-party function reports." *Jones*, 2016 WL 915236, at *8. Nevertheless, because inconsistencies with the medical evidence was the ALJ's "[m]ost significant[]" reason for the weight assigned to the third-party statements (AR 16), any error is harmless. *See id.*

### C. Weight Given to Medical Opinions

Shelton argues that the ALJ did not give "good reasons" for assigning little weight to the RFC opinions of her treating mental-health sources, NP Howe[10] and Dr. Hansen; her treating physician, Dr. Brooks; and one-time consulting examiner, Dr. Taylor. When determining a claimant's RFC, the ALJ considers "medical opinions . . . together with the rest of the relevant evidence." 20 C.F.R. § 416.927(b); 82 Fed. Reg. at 5880. "The

---

[10] For claims filed before March 27, 2017, a nurse practitioner is not considered a treating source whose opinion may be entitled to controlling weight. *See* 20 C.F.R. §§ 416.902, 416.913(a), (d), 416.927(c); 82 Fed. Reg. at 5873, 5880-81. Nevertheless, the Eighth Circuit has recognized that the opinion of a nurse practitioner treating mental health may be entitled to great weight under certain circumstances. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). I need not address whether those circumstances apply here, however, because I find the ALJ gave good reasons for giving little weight to NP Howe's opinion, even if entitled to "treating-source weight."

ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. § 416.927(c)(2); 82 Fed. Reg. at 5880-81. Even if a treating source's opinion is not given controlling weight, it is generally entitled to substantial weight. *See Papesh*, 786 F.3d at 1132. "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

Dr. Hansen and NP Howe filled out mental RFC forms that were a little more than a page long. AR 934-35, 1053-54. They indicated that they had been treating Shelton for recurrent major depression since September 24, 2015, but that her limitations had existed since September 2014. *Id.* Dr. Hansen indicated that Shelton also suffered from anxiety. AR 1053. Dr. Hansen and NP Howe evaluated Shelton's mental ability to function in the workplace in six categories, which included her ability to perform simple tasks, to pay attention, to maintain attendance, to interact with others, and to respond to change. AR 934, 1053. They generally opined that her ability in most categories would depend on her mood and pain. *Id.* With regard to activities of daily living, Dr. Hansen noted that Shelton had difficulties "[a]t times" due to fibromyalgia and osteoarthritis, and NP Howe noted difficulties depending on pain and mood stability. *Id.* They both found that she had "good days" and "bad days" and that she would miss more than four days of work a month. AR 935, 1054.

The ALJ gave little weight to Dr. Hansen's and NP Howe's RFC assessments. AR 18. The ALJ explained that many of Dr. Hansen's and NP Howe's treatment notes indicated Shelton had normal memory and concentration, despite their finding of limitations on the RFC form. AR 18, 934, 1033-35, 1037, 1039, 1041, 1053. The ALJ

also discounted Dr. Hansen's and NP Howe's assessments because they "related the claimant's functional limitations to mood and pain levels, rather than objective clinical findings." AR 18. The ALJ further noted that neither Dr. Hansen nor NP Howe explained how they knew Shelton's limitations existed prior to their treatment of her. AR 18.

The ALJ gave good reasons for discounting Dr. Hansen's and NP Howe's opinions. An ALJ may decline to give controlling or substantial weight to a treating source's medical opinion that relies on a claimant's discredited subjective complaints rather than objective medical evidence. *See Reece*, 834 F.3d at 906, 909-10; *Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014); *Finch v. Astrue*, 547 F.3d 933, 936-37 (8th Cir. 2008); *but see Papesh*, 786 F.3d at 1132-33.[11] An ALJ may also "justifiably discount a treating physician's opinion when that opinion 'is inconsistent with the physician's clinical treatment notes.'" *Martise v. Astrue*, 641 F.3d 909, 918-919, 924-26 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009)) (affirming the ALJ's decision to give "less weight" to a treating source opinion based in part on the source opining that the claimant suffered from marked limitations in concentration when the source's treatment notes indicated that the claimant's concentration appeared intact); *see also Davidson*, 578 F.3d at 842-43 (holding that the ALJ permissibly gave non-controlling and "[non]significant" weight to a treating source opinion because of inconsistencies with the source's treatment notes); *House v. Astrue*, 500 F.3d 741, 744-45 (8th Cir. 2007) (affirming the ALJ's decision to give "little weight" to some of the

---

[11] In *Barton v. Berryhill*, No. 15-CV-1723-DDN, 2017 WL 878036, at *6 (E.D. Mo. Mar. 6, 2017), the court distinguished *Papesh* on the basis that the treating physician's opinion there was "consistent with the overall record" and the claimant's "credible description of her limitations, and it contradicted with only *one* other doctor's opinion" (unlike the opinion at issue in *Barton*).

treating source's opinions because they were inconsistent with his treatment notes, as well as the overall record); *but see Papesh*, 786 F.3d at 1132 (holding that the ALJ "offered no basis to give the [treating source's] opinion non-*substantial* weight," as opposed to non-controlling weight, when the ALJ reasoned that the opinion was "inconsistent with [the treating source's] own treatment notes"). Moreover, limitations based on Shelton's pain, a physical ailment, go beyond Dr. Hansen's and NP Howe's expertise as mental-health professionals. *See Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (holding that the ALJ could disregard consulting psychologists' RFC opinions because they were "largely based" on the claimant's physical ailments). Because Dr. Hansen and NP Howe completed only a short form that "cites no medical evidence[] and provides little to no elaboration," it is impossible to discern whether particular limitations are based on Shelton's physical or mental impairments—including their opinions that Shelton would miss more than four days of work a month. *Id.* (holding that the form of a treating source's RFC opinion may limit its evidentiary value). The ALJ did not err in assigning little weight to Dr. Hansen's and NP Howe's RFC assessments.

Neither did the ALJ err in assigning little weight to Dr. Brooks's RFC assessment, although this is a close issue. Like Dr. Hansen and NP Howe, Dr. Brooks filled out a form that was about a page long. AR 1028-30. He indicated that he had first seen Shelton on May 5, 2015, and had last seen her on November 2, 2015, more than four months prior to when he filled out the RFC form. AR 1028, 1030. He opined that she suffered from fibromyalgia and osteoarthritis, as well as mental impairments. AR 1028. In an eight-hour day, he found that she could stand for two hours and sit for six hours. *Id.* He further opined that she could have no repetitive overhead use of her arms and that she could not kneel, crawl, or squat. *Id.* He indicated that Shelton had "good days" and "bad days" and would miss work about four days a month due to her impairments. AR 1029.

The ALJ noted that his findings were similar to Dr. Brooks's in certain areas, but in totality, he gave Dr. Brooks's opinion little weight. AR 18. The ALJ discounted Dr. Brooks's opinion because it was "not clear what clinical findings Dr. [Brooks] . . . relied upon when" determining that Shelton would miss four days of work a month. AR 18. At the hearing, the ALJ asked Shelton the basis for Dr. Brooks's opinion, and Shelton responded that she believed her pain would cause her to miss more than four days of work a month. AR 21, 54-55. The ALJ also found that treatment notes showed that Shelton recovered well from surgery on her right knee. AR 19, 939-52. On the other hand, Dr. Brooks's treatment notes indicate that Shelton primarily complained of neck and left knee pain in the latter half of 2015 (rather than right knee pain) and that x-rays showed degenerative changes in those areas. AR 911, 920-25, 931, 973, 1006. Finally, the ALJ found that Dr. Brooks's treatment notes and the objective medical evidence did not support the limitation related to overhead use of the extremities. AR 19. The ALJ pointed to a May 2015 treatment note by Dr. Brooks that indicated Shelton had previously had an electromyogram (EMG) of her right hand, which was negative. AR 19, 875. Although a November 2015 spinal compression test elicited pain in the right arm, a subsequent EMG was never performed. AR 19, 926.

The objective medical evidence relied on by the ALJ is equivocal: it neither proves the necessity of, nor is inconsistent with, the limitations found by Dr. Brooks. As noted earlier, a lack of support from clinical and laboratory techniques may provide a "good reason" for an ALJ to give non-controlling weight to a treating source's opinion. *See* 20 C.F.R. § 416.927(c)(2); 82 Fed. Reg. at 5880-81. Whether Dr. Brooks's opinion is entitled to substantial weight presents a closer issue. Ultimately, it seems as though the ALJ gave less weight to Dr. Brooks's opinion because the ALJ thought it was based, at least in part, on Shelton's discredited subjective complaints, rather than clinical findings. As noted earlier, this is an acceptable reason for an ALJ to give non-substantial weight

to the opinion of a treating physician. *See Reece*, 834 F.3d at 906, 909-10; *Julin*, 826 F.3d at 1085, 1089; *Cline*, 771 F.3d at 1104; *Finch*, 547 F.3d at 936-37. Thus, the ALJ did not err in assigning little weight to Dr. Brooks's RFC opinion.

It is unclear whether Shelton is challenging the ALJ's evaluation of Dr. Taylor's opinion, but in any event, the ALJ did not err in assigning it little weight. As Dr. Taylor is a consulting examiner, his opinion is not entitled to any special weight. *See Kirby*, 500 F.3d at 709; *see also Perrymore v. Colvin*, 607 F. App'x 614, 615 (8th Cir. 2015) (per curiam) (citing *Kirby*). The ALJ found that Dr. Taylor's restrictions were influenced by Shelton's subjective complaints, which, as discussed earlier, the ALJ discredited. AR 17-18. Substantial evidence supports this finding: Dr. Taylor explicitly noted that he was relying in part on the "history given by the examinee" and that he "assumed that the information provided . . . is correct." AR 686. With regard to lifting restrictions, he noted that he was basing his opinion on Shelton's reports of pain. AR 684-85. Dr. Taylor also credited Shelton's subjective statements over his objective testing on at least one instance, imposing grip and grasp limitations based on Shelton's report of difficulties when his evaluation evinced strong grip strength. AR 682, 684-85. The ALJ did not err in assigning little weight to Dr. Taylor's opinion because it relied on Shelton's discredited subjective statements. *See Kirby*, 500 F.3d at 709.

### D. Some Medical Evidence

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v.*

*Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).  Because the ALJ did not give substantial weight to any medical opinion, Shelton argues that some medical evidence does not support the ALJ's RFC determination.[12]

Shelton relies on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000); *Lund v. Weinberger*, 520 F.2d 782 (8th Cir. 1975); and *Lauer*, 245 F.3d 700; all of which are distinguishable.[13]  In *Nevland*, the record contained no RFC assessment from either a treating source or examining consultant.  204 F.3d at 858.  In *Lund*, the only medical opinion "in the record of [the claimant's] ability to do work [wa]s favorable to [the claimant]." 520 F.2d at 785.  Here, by contrast, the record contains RFC opinions from three treating medical providers and a consulting examiner, and the RFC opinions from the state agency medical consultants support the ALJ:  Dr. Lark's and Dr. Tashner's mental RFC assessments and Dr. Gernes's physical RFC assessment contain similar limitations as the ALJ's RFC determination.  AR 14, AR 112-14, 129-139.

In *Lauer*, the claimant's treating psychiatrist and the consulting psychological examiner found that the claimant was unable to perform many work-related functions.  245 F.3d at 704.  The ALJ did not adopt their opinions, and his decision was "unclear as to the medical basis . . . for his [RFC] assessment." *Id.* at 704-05.  The Commissioner argued that the non-examining medical consultant's RFC opinion supported the ALJ, but the Eighth Circuit rejected that argument, in part because the non-examining medical

---

[12] Shelton does not contend that the ALJ should have obtained additional RFC opinions from other doctors.

[13] Shelton also relies on *Pratt v. Sullivan*, 956 F.2d 830 (8th Cir. 1992), which is inapposite: in that case, the Eighth Circuit addressed medical-opinion evidence to determine whether the claimant had a serious impairment for purposes of the second step of the disability determination. Even considering that context, the case is distinguishable because there, the ALJ's findings were not supported by any medical evidence and were contradicted by the opinions of five treating sources.  956 F.2d at 834.

consultant, "in contrast to the ALJ, . . . did not find that [the claimant] suffered from a somatoform disorder." *Id.* at 705. The court reasoned that the ALJ could not have relied on the non-examining consultant's "assessment of the limitations caused by [the claimant's] mental impairments when [the claimant] did not even agree with the ALJ as to the existence *vel non* of those impairments." *Id.* Here, unlike in *Lauer*, the RFC opinions of Dr. Lark, Dr. Tashner, and Dr. Gernes support the ALJ's opinion and are based on the same severe impairments as found by the ALJ: Dr. Byrnes and Dr. Tashner found that Shelton suffered from severe affective, anxiety, and personality disorders, and Dr. Gernes found that Shelton suffered from severe degenerative disc disease, obesity, respiratory disorder, disorders of muscle ligaments and fascia, major joints dysfunction, status-post right knee replacement, and degenerative changes in the left knee. AR 105, 126-27, 129.

The ALJ also conducted an independent review of the medical evidence, analyzing treatment notes and hospital records in considerable detail. AR 14-21. This independent review of the evidence, combined with the supporting state agency RFC opinions, constitutes some medical evidence for the ALJ's RFC determination. *See Kamann v. Colvin*, 721 F.3d 945, 949-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulate[d] his own medical opinion" when the ALJ's RFC determination was based on a "thorough[] review[] [of] years of medical evidence on record and . . . consistent with the views of . . . the reviewing agency psychologist"); *see also Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (finding some medical evidence supported the ALJ's physical RFC determination when it was consistent with the state agency medical consultants' opinions, and at least one treating physician's physical RFC opinion was in the record but assigned non-controlling weight); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (holding that some medical evidence supported the ALJ's RFC determination when he rejected the treating source's RFC opinion and relied on the

opinion of a consulting physician and an independent review of the medical evidence); *cf. Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once"). It does not matter that the ALJ assigned the state agency medical consultants' opinions only "some weight," since he incorporated virtually all of their found limitations. *See Dickson v. Berryhill*, No. 16-CV-00267-NCC, 2017 WL 1152038, at *7-9 (E.D. Mo. Mar. 28, 2017) (holding that some medical evidence supported the ALJ's RFC determination even though the ALJ gave no more than some weight to all the medical opinions); *Fleming v. Colvin*, No. 14-CV-03109-MEF, 2016 WL 483035, at *8 (W.D. Ark. Feb. 8, 2016) (upholding a RFC determination based on non-examining consultant and review of the entire record, and where the ALJ gave good reasons for discounting the treating source); *Webb v. Colvin*, No. 13-1491-DWF, 2014 WL 4668974, at *30 (D. Minn. Sept. 18, 2014) (adopting magistrate's report and recommendation) (same).

It is also irrelevant that the state agency medical consultants did not expressly opine that Shelton would not miss more than four days of work a month. *See Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) (holding that substantial evidence supported the ALJ's RFC determination when the ALJ discounted the treating physicians' RFC opinions and instead gave weight to the opinions of non-examining doctors); *id.* at 941-42 (Heaney, J., dissenting) (noting that the state agency medical consultant "expressed no opinion on the issues that [the treating physicians] found disabling: whether the combination of [the claimant's] disabilities would cause her to miss at least four days per month"). As discussed above, substantial evidence supports the ALJ's decision to discount Shelton's treating sources' conclusory opinions that she would miss at least four

days of work a month. Moreover, when evaluating mental RFC, Dr. Lark and Dr. Tashner opined that Shelton faced no limitations in her ability to maintain attendance. AR 112, 134.

In sum, substantial evidence, including some medical evidence, supports the ALJ's RFC determination.


### III.   CONCLUSION

The court recommends that the district court affirm the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 29th day of June, 2017.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa